# STATE OF VERMONT

# ENVIRONMENTAL COURT

|  |  |
|---|---|
| In re JLD Properties – Wal-Mart St. Albans } <br> (4-Lot Subdivision) } | Docket No. 242-10-06 Vtec |

*******************************************************************************

|  |  |
|---|---|
| In re JLD Properties – Wal-Mart St. Albans } <br> (Site Plan & Conditional Use Approval) } | Docket No. 92-5-07 Vtec |

*******************************************************************************

|  |  |
|---|---|
| In re JLD Properties – Wal-Mart St. Albans } <br> (Act 250 Land Use Permit) } | Docket No. 116-6-08 Vtec |

## Decision on Multiple Motions

This matter arises out of efforts by Applicant-Appellee JLD Properties of St. Albans, LLC ("JLD Properties" or "Applicant"), to gain the permit approvals necessary to build a new Wal-Mart retail store at 424 Swanton Road in the Town of St. Albans ("Town"). In particular, Docket Number 242-10-06 Vtec concerns an appeal brought by Vermont Natural Resources Council ("VNRC") (representing Marie Frey, Richard Hudak, and 30 members of the Town or adjoining municipalities) of a September 22, 2006 determination by the Town Development Review Board ("DRB"), granting approval of the final plat for a 4-lot subdivision; Docket Number 92-5-07 Vtec concerns an appeal by Commons Associates ("Commons"), and a cross-appeal by VNRC (representing Marie Frey, Richard Hudak, and 46 members of the Town or adjoining municipalities), of two April 26, 2007 determinations by the DRB, one granting site plan approval and the other granting conditional use approval, with both decisions also granting approval for a Planned Unit Development ("PUD"); and Docket Number 116-6-08 Vtec concerns an appeal by VNRC (representing Marie Frey, Richard Hudak, the Northwest Citizens for Responsible Growth, and VNRC), and cross-appeals by Commons, the City of St. Albans ("City"), and the Agency of Natural Resources ("ANR"), of a May 16, 2008 determination by the District #6 Environmental Commission ("District Commission"), approving an Act 250 Land Use Permit for the proposed project.

Applicant-Appellee JLD Properties is represented by Stewart H. McConaughy, Esq., and Robert F. O'Neill, Esq.; the Town (an Interested Party) is represented by David A. Barra, Esq.;

1

Appellant and Cross-Appellant VNRC and those it represents are represented by Jon Groveman, Esq.; Appellant and Cross-Appellant Commons and Interested Party R.L. Vallee, Inc., are both represented by Jon T. Anderson, Esq.; the City (a Cross-Appellant) is represented by Brian S. Dunkiel, Esq.; Cross-Appellant ANR is represented by Judith L. Dillon, Esq.; Interested Party Vermont Natural Resources Board ("NRB") Land Use Panel is represented by John H. Hasen, Esq.; Interested Party NRB Water Resources Panel is represented by Mark L. Lucas; and Interested Party Vermont Agency of Transportation is represented by John K. Dunleavy, Esq., and Trevor R. Lewis, Esq.

This Decision addresses four motions that are currently pending before this Court. In Docket Number 116-6-08 Vtec (the Act 250 land use permit appeal), VNRC has filed a motion to dismiss, which is opposed by JLD Properties and the Town. At the suggestion of JLD, we have treated VNRC's motion to dismiss as a motion for summary judgment, and JLD Properties has asked for partial summary judgment in its favor on this issue. Also in Docket Number 116-6-08 Vtec, VNRC has filed a motion for reconsideration of this Court's October 10, 2008 Entry Order ("Entry Order"), and the NRB Land Use Panel has responded. In Docket Number 92-5-07 Vtec (the site plan and conditional use approval appeal), VNRC has filed a motion for summary judgment, and JLD Properties and the Town have responded in opposition and asked for partial summary judgment in their favor to dismiss Questions 1, 2, 3, and 4 of VNRC's Statement of Questions. Finally, also in Docket Number 92-5-07 Vtec, as well as in Docket Number 242-10-06 Vtec (the 4-lot subdivision appeal), VNRC has filed a motion for summary judgment, which is opposed by JLD Properties and the Town.

### Factual Background

For the sole purpose of putting the pending motions in context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

**Facts Related to Whether the Project Is an Improper Successive Application:[1]**

1.      Sometime before December 21, 1993, St. Albans Group (JLD Properties' predecessor-in-interest to its land) and Wal-Mart Stores, Inc., applied for an Act 250 land use permit to build a

---

[1]  Many of the facts listed in this section are derived from the Environmental Board's 1995 determination on a previous application for a Wal-Mart discount store in the same proposed location. See In re St. Albans Group & Wal*Mart Stores, Inc., No. 6F0471-EB, Findings of Fact, Conclusions of Law, & Order (Altered) (Vt. Envtl. Bd. June 27, 1995), available at http://www.nrb.state.vt.us/lup/decisions/1995/6f0471-eb-fco-alt.pdf. Additional facts are derived from the Vermont Supreme Court's 1997 decision upholding the Environmental Board's determination. See In re Wal*Mart Stores, Inc. & St. Albans Group, 167 Vt. 75 (1997).

Wal-Mart discount retail store in the same location in St. Albans that is proposed for development in the application that is currently before this Court.

2. On December 21, 1993, the District Commission issued Act 250 Land Use Permit #6F0471, authorizing the then-applicants St. Albans Group and Wal-Mart Stores, Inc., to build a 126,090 square foot discount retail store.

3. In January 1994, several interested parties applied for party status and appealed the District Commission's determination to the Environmental Board. The then-applicants cross-appealed the grant of party status. The Board granted party status with respect to certain criteria listed in 10 V.S.A. § 6086, and the appeal proceeded relative to Criteria 1(A), 1(B), 1(E), 1(G), 4, 5, 6, 7, 9(A), 9(H), 9(K), and 10. The interested parties appealed the Board's decision denying them party status with respect to certain other criteria, but the Board did not alter its decision. During the appeal, the then-applicants amended the size of the proposed store, reducing it to 100,000 square feet.

4. On December 23, 1994, the Environmental Board overturned the District Commission's issuance of an Act 250 permit. After concluding that the then-applicants had failed to meet the requirements of Criteria 6, 7, 9(A), and 9(H), the Environmental Board denied the permit application.

5. The then-applicants asked the Environmental Board to alter its determination. This request was denied, and the Environmental Board issued a final determination on June 27, 1995. See In re St. Albans Group & Wal*Mart Stores, Inc., No. 6F0471-EB, Findings of Fact, Conclusions of Law, & Order (Altered) (Vt. Envtl. Bd. June 27, 1995), available at http://www.nrb.state.vt.us/lup/decisions/1995/6f0471-eb-fco-alt.pdf. This determination also concluded that the then-applicants had failed to meet the requirements of Criteria 6, 7, 9(A), and 9(H). See id.

6. The then-applicants appealed the Environmental Board's 1995 determination to the Vermont Supreme Court.

7. In 1997, the Vermont Supreme Court upheld the Environmental Board's 1995 determination. See In re Wal*Mart Stores, Inc. & St. Albans Group, 167 Vt. 75 (1997).

8. On December 21, 2005, JLD Properties (the successor-in-interest to the St. Albans Group) filed a new Act 250 permit application to build a roughly 147,000 square foot Wal-Mart on the same site that had previously been denied an Act 250 permit in the 1995 Environmental Board determination.

9. On May 16, 2008, the District Commission made a determination that approved JLD Properties' application and issued Act 250 Land Use Permit #6F0583 (Altered), which is the subject of this appeal.

**Facts Related to the Possible Conflict of Interest in the District Commission Proceedings:**

10. On June 22, 2006, while JLD Properties' Act 250 application was pending before the District Commission, VNRC sent a letter requesting disclosures from Dan Luneau, the District Commission Chair, regarding property that his family might own or control in the immediate vicinity of the proposed Wal-Mart project. VNRC specifically requested that Mr. Luneau disclose the nature of any such property holdings, how such holdings might be affected by an approval or denial of JLD Properties' Act 250 application, and whether those holdings constitute a conflict of interest for Mr. Luneau.

11. On June 26, 2006, at the first District Commission hearing on the Wal-Mart application, Mr. Luneau responded to VNRC's letter by reading a prepared statement into the record, in which Mr. Luneau made certain disclosures and assured VNRC that the application would be subject to a fair and impartial hearing.

12. After the District Commission ruled in favor of Wal-Mart's application, VNRC appealed to this Court and raised the issue of Mr. Luneau's potential conflict of interest in Question 1 of its Statement of Questions in Docket Number 116-6-08 Vtec.

13. As part of the discovery process in this appeal, VNRC served Mr. Luneau with requests for information.

14. In response, Mr. Luneau—as represented by the NRB Land Use Panel—moved for a Protective Order to shield Mr. Luneau from VNRC's discovery requests and to dismiss VNRC's Question 1 from its Statement of Question.

15. On October 10, 2008, this Court granted Mr. Luneau's request for a Protective Order and dismissed VNRC's Question 1. See Entry Order at 2–3.

**Facts Related to the Alleged Conflicts of Interest in the DRB Proceedings:**

16. The DRB has nine members.

17. On January 4, 2007, the DRB held its first hearing to jointly consider JLD Properties' conditional use permit, site plan, and PUD applications for the proposed Wal-Mart discount retail store. These hearings resulted in a determination on April 26, 2007, granting site plan and conditional use approval to JLD Properties' proposed project.

18.    Throughout these 2007 proceedings, Bob Johnson served as the chair of the DRB and eventually voted to approve the project. VNRC alleges that Mr. Johnson had a conflict of interest based upon previous statements he had made, and VNRC also alleges that this conflict of interest tainted the DRB proceedings.

19.    Throughout these 2007 proceedings, DRB members Mr. Schofield, Mr. Wechsler, Mr. Brigham, Mr. Sanders, and Mr. Guptill participated and eventually voted to approve the project. VNRC alleges that these five members of the DRB had a conflict of interest based upon their previous participation and approval of a similar application. Specifically, these five DRB members were also members of the DRB in 2005 and voted to grant site plan and conditional use approval at that time to a previous application to build a Wal-Mart on this same site.

20.    During the 2004–2005 DRB review of the proposed Wal-Mart project, Mr. Johnson (a Town Selectboard member at the time) made the following statement on behalf of the Selectboard:

> The St. Albans Town Selectboard, as an interested party, would like to enter into the record our concerns and observations relative to the application of JLD Properties for a Wal-Mart store.
>
> ***
>
> The parties wishing to testify against Wal-Mart arrived here tonight with their thinly-veiled agendas, or axes to grind, if you will. . . . We have local business people from the retail and agricultural communities who believe this land to be the Garden of Eden rather than a failed farm that is underutilized, overtaxed and smack in the middle of our designated growth center.
>
> The most conspicuous of these 'Interested Parties' is the sister agency of the infamous Conservation Law Foundation [("CLF")]. This group, the Vermont Natural Resources Council, needs a map to find Northwestern Vermont as all of their board members, attorneys and staff work and reside far from the St. Albans area. Among other things, they take issue with one board member who had the nerve to wear a Wal-Mart hat to a DRB meeting. . . . Other entities have suggested they know better what would work for St. Albans Town . . . . One such idea, an ill-conceived and economically infeasible suggestion for a scaled-down Wal-Mart in the heart of the City is just short of comical. The one thing it shows is their total lack of understanding of the local area and why decisions need to be made by those who are informed, not by a bunch of elitists with nothing invested in the community.

(Minutes of the St. Albans Town DRB Hearing on the Wal-Mart Application (Dec. 16, 2004), attached as Ex. 3 to VNRC's Mot. for Summ. J. in Docket No. 92-5-07 Vtec.) As a member of the Selectboard at the time, Mr. Johnson had signed the letter that he read into the record.

5

21. In January 2006, a Northwest Regional Planning Commission ("NRPC") report characterized the proposed Wal-Mart store as too large in scale to meet regional market needs and problematic in its cumulative impacts. Mr. Johnson publicly responded by calling the report "ridiculous" and "dangerously flawed," characterizing the Director of NRPC as "definitely against Wal-Mart," and stating that it is "a sad day when NRPC now qualifies to be lumped together with the VNRC and CLF as an organization devoted to their personal ideals rather than to the realities of growth." (St. Albans Town Messenger (Jan. 24, 2006), attached as Ex. 5 to VNRC's Mot. for Summ. J. in Docket No. 92-5-07 Vtec.)

22. During his 2006 campaign to be a member of the Town Selectboard, Mr. Johnson publicly stated the following about the proposed Wal-Mart: "I'm in favor of it. They have jumped through enough hoops. They have satisfied the Town to the nth degree." (St. Albans Town Messenger (Mar. 25, 2006), attached as Ex. 6 to VNRC's Mot. for Summ. J. in Docket No. 92-5-07 Vtec.)

23. At the January 4, 2007 meeting, DRB member David Schofield raised concerns about a potential conflict of interest for Mr. Johnson related to his previous statements. Mr. Schofield told Mr. Johnson that "I believe that you have a conflict of interest" and that there was no point in proceeding when there was a potential for such a conflict. (Minutes of the St. Albans Town DRB Hearing (Jan. 4, 2007), attached as Ex. 1 to VNRC's Mot. for Summ. J. in Docket No. 92-5-07 Vtec.)

24. At that same hearing, DRB member Steve Wechsler also raised concerns resulting from Mr. Johnson's previous statements, and Mr. Wechsler noted that he did not wish to go forward with the proceeding until this potential conflict of interest was resolved. (Id.) Cheryl Teague, an audience member and the former Chair of the DRB during the previous review of the Wal-Mart application, raised further concerns about Mr. Johnson's potential conflict of interest. (Id.) She said that "she could not see how this was not a conflict of interest." (Id.)

25. At that same hearing, VNRC stated that it believed that Mr. Johnson had a conflict of interest. (Id.) VNRC also noted its view that all of the members of the DRB who had voted on the earlier application were conflicted out of hearing the new application. (Id.)

26. In response to the statements by Mr. Schofield, Mr. Wechsler, Ms. Teague, and VNRC, Mr. Johnson noted that his statement at the December 16, 2004 DRB Hearing was on behalf of the Selectboard, not a personal statement, and that "he believed in his own integrity" and his ability to judge the case on its merits in an unbiased manner. (Id.)

6

27. On February 21, 2007, VNRC notified the DRB by letter that it would no longer participate in the DRB hearings unless Mr. Johnson and the five members of the DRB who had approved the previous project were recused and replaced by new members who would not have any conflicts of interest.

28. None of the members of the DRB recused themselves.

29. The DRB voted to approve Wal-Mart's application on April 26, 2007. All of the members with alleged conflicts of interest (Mr. Johnson, Mr. Schofield, Mr. Wechsler, Mr. Brigham, Mr. Sanders, and Mr. Guptill) voted in favor of granting site plan and conditional use approval to JLD Properties' proposed project. That DRB determination is the subject of the appeal in Docket Number 92-5-07 Vtec.

**Facts Related to the Alleged Defects in the DRB Proceedings:**

30. On June 14, 2005, the DRB granted site plan and conditional use approval to a previous application by JLD Properties for development of the project site as a PUD. In this determination, the DRB required JLD Properties to apply for a 4-lot subdivision. This determination granting site plan and conditional use approval was appealed to the Vermont Environmental Court, which issued a September 5, 2006 Decision that noted improper conflicts of interest in the DRB panel that made the 2005 determination. In re JLD Properties – Wal Mart St. Albans, No. 132-7-05 Vtec (Vt. Envtl. Ct. Sept. 5, 2006) (Wright, J.). Although this Court did not remand the application at that time, the appeal was dismissed without prejudice less than two months later in an Entry Order, ruling in favor of a request by the Town and JLD Properties to allow JLD Properties to file a new application to be heard by an impartial DRB. In re JLD Properties – Wal Mart St. Albans, No. 132-7-05 Vtec (Vt. Envtl. Ct. Nov. 1, 2006) (Wright, J.) (unpublished mem.). As expected, JLD Properties then reapplied for the site plan and conditional use approvals that were the subject of this Court's September 5, 2006 Decision.

31. On March 13, 2006, JLD Properties filed its application for Sketch Plan Approval for a 4-lot subdivision.

32. According to JLD Properties, it was not until May 29, 2006, that certain amendments to the Town's Zoning Bylaws and Subdivision Regulations ("Bylaws") became effective, including

7

§ 420, which is titled "Concurrent Review" and lists the order in which various reviews of a project are to be conducted.[2]

33. On September 14, 2006, the DRB voted to grant Final Plat Approval for the 4-lot subdivision permit. (Minutes of the St. Albans Town DRB Meeting (Sept. 14, 2006), attached as Ex. 1 to VNRC's Mot. for Summ. J. in Docket Nos. 92-5-07 Vtec & 242-10-06 Vtec.)

34. On September 22, 2006, the DRB issued a written decision granting the 4-lot subdivision permit. This determination was appealed to the Environmental Court in Docket Number 242-10-06 Vtec.

35. As discussed earlier, it was several months later (beginning on January 4, 2007) that the DRB held its first hearings to jointly consider the conditional use approval, site plan, and PUD applications, and the DRB approved those applications on April 26, 2007.

## Discussion

VNRC has filed four motions that are currently pending before this Court, some of which resulted in cross-motions. We address each issue in turn.

**A.      Cross-Motions for Summary Judgment in Docket Number 116-6-08 Vtec (the Act 250 Land Use Permit Appeal) Regarding Whether the Project Is an Improper Successive Application**

VNRC has filed a motion to dismiss Docket Number 116-6-08 Vtec (the Act 250 land use permit appeal) based on the argument that JLD Properties has filed an improper successive application for a project that was previously denied an Act 250 land use permit. JLD Properties has treated VNRC's motion to dismiss as a motion for summary judgment, and JLD Properties has asked for partial summary judgment in its favor on this issue. We agree with JLD Properties that VNRC's motion is more properly viewed as a motion for summary judgment, since we find that resolution of this motion requires the consideration of matters outside of the pleadings. See V.R.C.P. 12(b)–(c). Although normally the Court should give notice of such a conversion, we find here that JLD Properties' explicit mention of this conversion in its opposition brief—and before VNRC filed its reply brief—was sufficient to provide VNRC with a reasonable opportunity to present material relevant to summary judgment proceedings. See id. This seems particularly appropriate given that VNRC did not object to this conversion even after JLD

---

[2] We note that the effective date of May 29, 2006, is according to JLD Properties, but has not been challenged by VNRC or any other party. Unfortunately, the Bylaws that were provided to the Court do not list an effective date.

8

Properties' opposition brief put VNRC on notice of it.  We therefore treat this issue as presenting cross-motions for summary judgment.

We may grant summary judgment only when "the pleadings, depositions, [and] answers to interrogatories, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law."  V.R.C.P. 56(c)(3).   Generally, the burden of proof is on the party requesting summary judgment. Chapman v. Sparta, 167 Vt. 157, 159 (1997).  When presented with cross-motions for summary judgment, we must consider each motion in turn and afford all reasonable doubts and inferences to the party opposing the particular motion under consideration.  DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)).

The cross-motions for summary judgment on this issue focus upon the significance of a previous denial of an Act 250 permit for a similar project.  In 1993, the St. Alban's Group (JLD Properties' predecessor-in-interest) & Wal-Mart applied for an Act 250 land use permit to build a Wal-Mart discount retail store in the same location as the proposed Wal-Mart in this case.  The District Commission initially granted the permit, but the Environmental Board overturned that decision and denied the permit.  See In re St. Albans Group & Wal*Mart Stores, Inc., No. 6F0471-EB, Findings of Fact, Conclusions of Law, & Order (Altered) (Vt. Envtl. Bd. June 27, 1995), available at http://www.nrb.state.vt.us/lup/decisions/1995/6f0471-eb-fco-alt.pdf.   The Environmental Board held that the then-applicants had failed to meet the requirements of the following four criteria: Criterion 6 (the impact on schools), Criterion 7 (the impact on local government services), Criterion 9(A) (the impact of growth), and Criterion 9(H) (the costs of scattered development).  Id. (applying the criteria listed in 10 V.S.A. § 6086).[3]   The Vermont Supreme Court upheld the Environmental Board's denial.  See In re Wal*Mart Stores, Inc. & St. Albans Group, 167 Vt. 75 (1997).[4]

VNRC argues that the doctrines of res judicata (now referred to as claim preclusion) and collateral estoppel (now referred to as issue preclusion) bar JLD Properties from receiving approval of its current application.   These doctrines aim to create finality by preventing

---

[3]  Although a permit may not be denied based on a failure to meet Criteria 6 and 7 alone, see 10 V.S.A. § 6087(b), Wal-Mart's failure under Criteria 9(A) or 9(H) does require denial of the permit.

[4]   More specifically, the Supreme Court affirmed the Environmental Board's "denial of the permit based on Wal*Mart's failure to meet its burden under Criterion 9(A), [and did] not reach the issues raised under Criterion 9(H)."  Id. at 79 n.2.

unnecessary relitigation of claims and issues that have already been decided. See, e.g., Trepanier v. Getting Organized, Inc., 155 Vt. 259, 265–66 (1990) ("In short, . . . the party opposing collateral estoppel must show the existence of circumstances that make it appropriate for an issue to be relitigated."). According to VNRC, there is no need to relitigate the current application, given that the Environmental Board has already decided that placing a Wal-Mart in the proposed location would violate Criteria 6, 7, 9(A), and 9(H) and therefore cannot receive approval for an Act 250 permit.

The Environmental Board has developed procedures to allow applicants to apply for reconsideration of a permit denial. See Environmental Board Rule ("E.B.R.") 31(B), available at http://www.nrb.state.vt.us/lup/rules.htm.[5] This Rule implements 10 V.S.A. § 6087(c). These procedures require, among other things, that an applicant file for reconsideration within six months of the permit denial and include in the application an affidavit certifying that the applicant has addressed all of the deficiencies that led to the permit denial. See E.B.R. 31(B)(1). Certain benefits accrue to those applicants who meet these requirements—for instance, if the original proceeding concluded with positive findings for the applicant on certain criteria, the applicant would ordinarily not need to relitigate those issues in the reconsideration process. See E.B.R. 31(B)(2).

In this case, the original applicants chose not to pursue a motion for reconsideration.[6] We therefore find that Rule 31(B) is inapplicable to the appeals that are now before this Court. The preclusion of reconsideration of the 1993 application, however, does not necessarily prevent a future applicant from submitting a new application for a similar development project, as JLD Properties did here. New applications can be filed even after the six-month deadline imposed by Rule 31(B). Some might argue that Rule 31(B) is without teeth if applicants can avoid its

---

[5] As we have noted in other decisions, the former Environmental Board Rules are now called the Act 250 Rules and have been updated by the NRB. See, e.g., Dover Valley Trail, No. 88-4-06 Vtec, slip op. at 2 n.3 (Vt. Envtl. Ct. Jan. 16, 2007) (Durkin, J.). The new Act 250 Rules took effect on May 1, 2006, and amendments to these Rules are currently under consideration. Id. That said, we are directed to "apply[] the substantive standards that were applicable before the tribunal appealed from," 10 V.S.A. § 8504(h), which in this case requires us to apply the Environmental Board Rules in effect at the time that JLD filed the pending application.

[6] Instead of filing a motion for reconsideration under E.B.R. 31(B), the applicant filed a motion to alter the Environmental Board's determination under E.B.R. 31(A). The Environmental Board denied the motion to alter and issued a final order with minor changes. See In re St. Albans Group, No. 6F0471-EB. Among other requirements, the Environmental Board's final order stipulated that in order to take advantage of the reconsideration process, the applicant would need to submit further evidence—such as studies of the impact of secondary growth on the St. Albans community—to meet certain Act 250 criteria. See id. at 58–60. It is this determination—the finalization of the Environmental Board's permit denial—that the then-applicants appealed to the Supreme Court, which upheld the permit denial. In re Wal*Mart, 167 Vt. 75.

requirements by simply filing a new application. We disagree. In making the election not to pursue a motion for reconsideration, applicants necessarily waive the benefits that they would have otherwise received under Rule 31(B). Thus, in the application that is pending before this Court, JLD Properties cannot rely on any findings that the Environmental Board made in favor of the previous applicants; because JLD Properties' predecessor-in-interest elected not to take advantage of the reconsideration process embodied in Rule 31(B), we cannot give effect to the findings made in favor of the then-applicants in the Environmental Board's 1995 determination.

Although JLD Properties (through its predecessor-in-interest) has waived any right to take advantage of the findings and conclusions made in its favor in the Environmental Board's 1995 determination, this does not necessarily mean that JLD Properties can escape from those findings and conclusions that were made against its interests in the 1995 determination. The issue that is now presented for our consideration is what legal effect, if any, to give to the Environmental Board's 1995 findings and conclusions when it denied an Act 250 permit for a Wal-Mart store in the same location at issue in this case.

The Vermont Supreme Court has held that the doctrines of claim and issue preclusion apply to municipal planning commission proceedings:

> As a general rule, a zoning board or planning commission may not entertain a second application concerning the same property after a previous application has been denied, unless a substantial change of conditions has occurred or other considerations materially affecting the merits of the request have intervened between the first and second applications.

In re Carrier, 155 Vt. 152, 158 (1990).

This general rule, known as the "successive-application doctrine," embodies the principles of claim and issue preclusion as applicable to zoning applications. See In re Armitage, 2006 VT 113, ¶ 4 n.1, 181 Vt. 281. The successive-application doctrine has been codified by a statute that authorizes a municipal panel to "reject an appeal or request for reconsideration" if it determines that the issues raised "have been decided in an earlier appeal or involve substantially or materially the same facts." 24 V.S.A. § 4470(a).[7]

In the interests of finality, avoiding the relitigation of issues already decided, and affording the proper weight and respect that is due to the thorough analysis that was provided by

---

[7] Interestingly, this statute notes that a municipal panel "may" reject a successive application, not that it shall do so, implying that municipal panels can theoretically elect to grant a new hearing even to the exact same application. This discretion seems to be in tension with the holding of in In re Carrier that municipal panels "may not entertain" successive applications. In re Carrier, 155 Vt. at 158.

the Environmental Board's 1995 determination, we conclude that JLD Properties must meet an initial burden to "show the existence of circumstances that make it appropriate for an issue to be relitigated." Trepanier, 155 Vt. at 266; cf. In re Rome Family Corp., No. 1R0410-3-EB, Memorandum of Decision, slip op. at 4 (Vt. Envtl. Bd. May 2, 1989), available at http://www.nrb.state.vt.us/lup/decisions/1989/1r0410-3-eb-mod-den-mtd.pdf ("[A]n application for a previously-denied project that includes no changes from the denied application should not be allowed."). In light of this conclusion, we cannot avoid the issue that was left unaddressed in a previous case of ours—namely, "the degree to which a successive Act 250 application must differ from a previously denied one in order to be considered on its merits." In re McLean Enters. Quarry, Nos. 224-10-05 Vtec & 121-5-06 Vtec, slip op. at 5 (Dec. 22, 2006) (Wright, J.).

In imposing some sort of threshold requirement to prevent Act 250 permit applicants from resubmitting the same or similar application as one that has already been denied, we can look to two potential sources for guidance. One option is the successive-application doctrine that has developed in the context of municipal permit applications. Another option is the doctrine of changed circumstances that has developed in the context of proposed amendments to conditions imposed by Act 250 permits that have already been issued. Neither precedent is directly on point. If this were a municipal proceeding, rather than an Act 250 proceeding, the successive-application doctrine would apply. If this were an Act 250 permit amendment, rather than the submittal of a new application after a previous application had been denied, then we would apply the doctrine of changed circumstances. As it stands, both of these doctrines are analogous, though not precisely on point, and we therefore must analyze which is the proper doctrine for the circumstances here: the submission of a new Act 250 permit application, after a previous application for the same or similar project has been denied.

Although these two doctrines have developed in different contexts, they have enormous overlap. As the Vermont Supreme Court has noted on numerous occasions, the "successive-application doctrine is an attempt to balance the competing concerns of flexibility and finality in zoning decisions." In re Dunkin Donuts S.P. Approval, 2008 VT 139, ¶ 9 (mem.). In Dunkin Donuts, the Court followed this observation with the following footnote: "The concerns of 'flexibility and finality' have been treated extensively in the context of Act 250 permitting." Id. at ¶ 9 n.2 (citing In re Nehemiah Assocs., 168 Vt. 288, 294 (1998); In re Stowe Club Highlands, 166 Vt. 33, 38 (1996)). Indeed, Act 250 Rule 34(E), which codifies the balancing test that was developed in In re Stowe Club Highlands, has the words "balancing flexibility and finality" in its

title. Thus, although "an independent set of rules, not the successive-application doctrine, [is] applied to Act 250 permit amendment requests," the tests are quite similar and have the same purposes in mind. In re Dunkin Donuts, 2008 VT 139, ¶ 9 n.2.

The changed circumstances doctrine, as its name implies, requires that an applicant show some sort of change in the facts, applicable law, or technology, or provide some other explanation for why a district commission should allow a previously issued permit condition to be amended. See E.B.R. 34(E). Similarly, the Supreme Court has held that in order to satisfy the successive-application doctrine, "the applicant must show that there has been a substantial change in the application or the circumstances." In re Armitage, 2006 VT 113, ¶ 8 (citing In re Carrier, 155 Vt. at 158–59).

Although an argument could be made for applying the related doctrine of changed circumstances, we conclude that the successive-application doctrine is the more appropriate vehicle for analyzing whether to permit review of an Act 250 permit application for a project that has previously been denied a permit. Indeed, the Environmental Board has already incorporated the successive-application doctrine in these types of situations by allowing a previously denied applicant who failed to file for reconsideration under E.B.R. 31(B) to submit a new application for the same project, so long as the "new application [is] substantially different from prior applications." In re Berlin Assocs., No. 5W0584-14-EB (Vt. Envtl. Bd. Jan. 10, 1992), slip op. at 6, available at http://www.nrb.state.vt.us/lup/decisions/1992/5w0584-14-eb-app42991-mod.pdf.

Further, the Vermont Supreme Court recently commented on the ability of the successive-application doctrine to strike the proper balance between finality and flexibility that is appropriate to zoning decisions:

> On the one hand, zoning decisions must be responsive to changing circumstances. Schubach v. Silver, 336 A.2d 328, 333 (Pa. 1975) (need for flexibility in zoning decisions outweighs need for finality of judgments); Marks v. Zoning Bd. of Review of Providence, 203 A.2d 761, 763 (R.I. 1964) (zoning board must be able to reconsider applications in light of changed circumstances). On the other hand, property owners must enjoy some level of certainty in the zoning and use of nearby land. In re Crescent Beach Ass'n, 126 Vt. 140, 141 (1966) ("[The successive-application doctrine] is not to be technically and narrowly imposed, but yet enforced to the extent that property interests may be settled and stable, and property owners protected from harassment.").
>
> This balance of flexibility and finality is incompatible with a strict application of claim preclusion, which "is intended to protect the courts and the parties from the burden of relitigation." Russell v. Atkins, 165 Vt. 176, 179

(1996). Claim preclusion is a rigid doctrine that ends litigation without regard to equitable considerations. Faulkner v. Caledonia County Fair Ass'n, 2004 VT 123, ¶ 10, 178 Vt. 51. Applying the strict requirements of claim preclusion to zoning decisions would prohibit responses to changing circumstances in Vermont communities. But allowing changes in zoning applications without according respect to prior denials would encourage erratic, unpredictable land use. The successive-application doctrine is a compromise, applying general preclusive principles while allowing for adaptation to changing circumstances.

In re Dunkin Donuts, 2008 VT 139, ¶¶ 9–10 (parallel citations omitted).

We find this rationale to be just as applicable to successive applications in the Act 250 context as it is in the municipal context.[8] Indeed, the Supreme Court's most recent holding on this matter seems to exhibit a preference for applying the successive-application doctrine even in situations where the Court has previously upheld the application of the changed circumstances doctrine. Compare In re Dunkin Donuts, 2008 VT 139, ¶ 8 (noting that the successive-application doctrine applies to "zoning proceedings" generally and requiring its application in that case where a permit amendment—not a new application—was at issue) with In re Hildebrand, 2007 VT 5, ¶¶ 12–13, 181 Vt. 568 (approving of the use of the changed circumstances doctrine when evaluating municipal permit amendment requests). We view this as providing further foundation for the application of the successive-application doctrine here.

In applying the successive-application doctrine here, we begin with the premise that it is the applicant's burden to show "a substantial change in the application or the circumstances." In re Armitage, 2006 VT 113, ¶ 8 (citing In re Carrier, 155 Vt. at 158–59). We now find this to be a threshold requirement before the District Commission—or this Court, standing in its place in the case of a de novo appeal—can consider a revised application for a project that has already been denied an Act 250 permit. If an applicant meets its burden of showing a substantial change, then a new application for the same project can proceed to be heard on the merits.

JLD Properties' task before this Court is to present evidence that substantiates the claim of a substantial change, either in the application or in the circumstances surrounding it. See id. This Court has previously noted that a "substantial change in circumstances can occur when there have been changes to the application itself, to address concerns that caused the previous denial, a change in the physical surroundings of the property, or a change in the governing

---

[8] Our finding here does not conflict with the Supreme Court's footnote in In re Dunkin Donuts, explaining that an independent set of rules applies to Act 250 permit amendments. See id. at ¶ 9 n.2. As noted earlier, since the initial application in this case was denied, we are not presented with a legal question for which In re Stowe Club Highlands, In re Nehemiah Associates, or their progeny are directly controlling.

14

regulations." In re R.L. Vallee PUD (Spillane's) – 811 Williston Rd., No. 100-5-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Aug. 17, 2007) (Wright, J.) (internal citations omitted). An applicant cannot, however, "merely seek[] to introduce additional evidence . . . that could have been presented in the earlier proceeding." Id. (citing In re Armitage, 2006 VT 113, ¶ 9).

To determine whether changes are substantial enough to meet the requirements of the successive-application doctrine, it is often necessary to engage in a fact-specific analysis. Here, JLD Properties alleges numerous ways in which the pending application differs from the one submitted in 1993 and addresses the concerns that led to the previous permit denial. JLD Properties also points to several changes that have occurred in recent years to the physical and economic character of the proposed development area. VNRC, on the other hand, alleges that any proposed changes are minor and do not meet the threshold requirement for allowing relitigation of issues that have already been decided. VNRC makes the further claim that some changes—such as the decision to build a roughly 147,000 square foot store—can only exacerbate the problems that led the Environmental Board to deny an Act 250 permit for a proposed 100,000 square foot Wal-Mart.

As mentioned earlier, when presented with cross-motions for summary judgment, as is the case here, we must consider each motion in turn and afford all reasonable doubts and inferences to the party opposing the particular motion under consideration. DeBartolo, 2007 VT 31, ¶ 8 (citing Toys, 155 Vt. at 48). With this standard in mind, it is clear that material facts are still in dispute as to whether the current application represents an improper successive application, and we are therefore unable to conclude that either side is "so clearly correct as to be entitled to a judgment 'as a matter of law.'" Berlin Dev. Assocs. v. Dep't of Soc. Welfare, 142 Vt. 107, 110 (1982) (quoting V.R.C.P. 56(c)). Only a trial can resolve the difficult factual issues involved in determining whether there are substantial changes in the application, the surrounding circumstances, or the regulatory framework so as to address the concerns that led to the Environmental Board's 1995 Act 250 permit denial. Thus, summary judgment on this matter is inappropriate at this time. We therefore **DENY** both motions.

Given our conclusion that we cannot grant summary judgment to either party at this time, we are left in a bit of a conundrum as to how to proceed in this matter. As mentioned throughout our discussion of the successive-application doctrine, this doctrine presents a threshold question. Thus, in the normal course of things, JLD Properties must meet its burden to show a substantial change that justifies relitigating this matter, and only then can we litigate the issue at a merits

hearing. That said, given the enormous amount of overlap between the question of substantial changes and the actual merits of the application, it would be a waste of judicial resources to segregate these proceedings. We therefore conclude that the issue of whether the application presents an improper successive application will be addressed at the merits hearing that is already scheduled for this case. This is admittedly not a perfect solution, and we regret that VNRC and other parties may be forced to relitigate issues that we might ultimately find unworthy of relitigation. But we cannot justify holding two separate hearings on matters that are as intimately related as they are in this case, particularly when one of the primary purposes of the successive-application doctrine—and any other doctrine that aims in part at creating finality—is to conserve judicial resources. We therefore plan to hold only one hearing to address all of the legal and factual issues that must be addressed in these consolidated appeals.

**B.** **VNRC's Motion for Reconsideration in Docket Number 116-6-08 Vtec (the Act 250 Land Use Permit Appeal) Based on a Possible Conflict of Interest in the District Commission Proceedings Below**

VNRC's other motion in Docket Number 116-6-08 Vtec (the Act 250 land use permit appeal) is a motion for reconsideration of this Court's October 10, 2008 Entry Order, where we dismissed VNRC's Question 1 of its Statement of Questions (dealing with the possibility of a conflict of interest in the District Commission proceedings below). VNRC asks us to reconsider our decision in that matter and allow VNRC to proceed with discovery requests that aim to ferret out whether the District Commission proceedings were tainted with an improper conflict of interest.

This Court has recently summarized the high burden that falls upon any litigant who asks the Court to reconsider a previous decision. See In re Stormwater NPDES Petition, No. 14-1-07 Vtec, slip op. at 3–4 (Vt. Envtl. Ct. Feb. 18, 2009) (Durkin, J.). In particular, we noted that these arguments are analyzed "under a very restrictive standard of review." Id. at 3. Further, "[m]otions to reconsider should not be used to repeat arguments that have been raised and rejected by the Court in the earlier decision." Id. at 4 (citing In re Boutin PRD Amendment, No. 93-4-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. May 18, 2007) (Wright, J.)). In general, "motions to reconsider are rarely granted." Id. (citing S. Vill. Cmtys., LLC, No. 74-4-05 Vtec, slip op. at 2 (Vt. Envtl. Ct. Sept. 14, 2006) (Durkin, J.)).

In light of this strict standard of review, we note that VNRC has not provided this Court with an adequate justification for reconsidering our October 10, 2008 Entry Order. We

16

understand that VNRC expects that the members of a District Commission will be fair, unbiased, and free of any conflicts of interest. This Court expects the same. That said, we stand by our earlier decision that in our de novo review of those proceedings, this Court stands in the shoes of the District Commission, and because our expectation and goal is to conduct a fair and impartial de novo review, we find that in this particular case it is irrelevant that there may have been conflicts of interest in the proceedings below. Thus, we cannot allow VNRC to make discovery requests that pertain solely to trying to determine whether there was a conflict of interest in the proceedings below.

As we noted in our Entry Order, this case is different from the earlier municipal proceeding that led to this Court's September 5, 2006 Decision, because here the District Commission proceedings below do not present us with "any overt acts that rose to the level of a 'due process violation.'" Entry Order at 2 (citing In re JLD Properties, No. 132-7-05 Vtec, slip op. at 7). VNRC believes that we should not reach such a conclusion before VNRC has had a chance to conduct discovery to uncover whether the District Commission's actions were inappropriate. We disagree. This Court's September 5, 2006 Decision represents the rare situation where a municipal panel engages in overt acts that are so egregious that they call into question the public's view of the fundamental fairness and impartiality of these proceedings. See In re JLD Properties, No. 132-7-05 Vtec, slip op. at 5. We emphasize the word "overt" here because more subtle procedural errors—such as the ones that VNRC claims might have arisen in the Act 250 proceedings below—do not shake the public's confidence in the same way that overt acts do.

Although we expect District Commissions and other land use panels to proceed in the most professional manner possible, it is not this Court's duty to ensure that these proceedings are pristine. Indeed, even in the face of overt procedural violations, it is within this Court's discretion to determine whether a remand is appropriate. See id. at 8 (declining to remand the appeal); see also Appeal of Janet Cote, No. 257-11-02 Vtec, slip op. at 2 (Vt. Envtl. Ct. Apr. 11, 2003) (Wright, J.) (noting that the Court "can" vacate and remand in these situations, not that it must). But see In re Appeal of Gardner Stone, No. 193-12-97 Vtec (Vt. Envtl. Ct. June 24, 1998) (Wright, J.) (holding—without a discussion of de novo review—that in that case remand

was the "only mechanism available" to cure overt procedural errors).[9] Even in this Court's September 5, 2006 Decision, we noted that "procedural defects in reaching a DRB decision are generally disregarded in a de novo appeal, because the court must make its own determination as to the questions of law or fact raised in the appeal, and must 'apply the substantive standards that were applicable before the tribunal appealed from.'" Id. at 4 (citing V.R.E.C.P. 5(g)). That Decision went on to discuss an exception to this general rule when members of a municipal panel engage in overt acts that violate due process. See id. at 5–8; accord In re Appeal of Gardner Stone, No. 193-12-97 Vtec (remanding a case when a board member voted on a project even though her husband attended the proceeding as an interested party). But because the exception should not swallow the rule, we conclude here that any procedural defects below will not impact our de novo review. For these reasons, we **DENY** VNRC's motion for reconsideration.

**C.      Cross-Motions for Summary Judgment in Docket Number 92-5-07 Vtec (the Site Plan and Conditional Use Approval Appeal) Regarding Alleged Conflicts of Interest in the DRB Proceedings Below**

In Docket Number 92-5-07 Vtec (the site plan and conditional use approval appeal), VNRC has filed a motion for summary judgment, alleging that this case should be remanded based on improper conflicts of interest in the DRB proceedings below. JLD Properties and the Town have responded in opposition and asked for partial summary judgment in their favor to dismiss Questions 1, 2, 3, and 4 (dealing with alleged conflicts of interest) of VNRC's Statement of Questions.

This issue is closely related to VNRC's motion for reconsideration, and we hold that our discussion above also applies to our analysis here. Granted, the alleged conflicts of interest before the municipal proceeding present us with a closer call than what we have dealt with in our rulings regarding the District Commission proceedings. As is detailed above in our Factual Background, where we recount some of the past statements made by DRB Chair Bob Johnson, VNRC has good reasons to be concerned that the DRB Chair did not review the Wal-Mart application objectively. As this Court has previously noted, municipal panels have a duty to avoid even the appearance of bias. In re JLD Properties, No. 132-7-05 Vtec, slip op. at 5–6. We understand why VNRC believes that the DRB Chair should have recused himself from these proceedings.

---

[9] To the extent that In re Appeal of Gardner Stone (a 1998 decision) is inconsistent with our 2002 holding in Appeal of Janet Cote and our September 5, 2006 ruling in In re JLD Properties, we note that we agree with the conclusion of the more recent decisions, which find remand to be discretionary—not mandatory—in these types of situations.

That said, as discussed in detail above, when we are reviewing a case de novo, we are not charged with the duty of assessing the propriety of the proceedings below or assuring that they are pristine; rather, we need only remand a case when an overt and egregious act violates due process and the public's expectation of a fair proceeding. Here, in light of the DRB Chair's pre-hearing advocacy statements in favor of the project and challenges to the motivations of party opponents (VNRC in particular), we find it difficult to share his professed ability to act impartially in this matter. However, as egregious as the DRB Chair's statements were, we conclude that the more proper course is to continue towards and complete this Court's de novo review of the pending applications. We also find no merit in VNRC's argument that five other DRB members were necessarily biased simply because they previously voted in favor of an earlier application to build a Wal-Mart on this same site. See, e.g., Stone v. Baum, 409 F. Supp. 2d 1164, 1175 n.5 (D. Ariz. 2005) ("A judges' prior ruling in a case is absolutely not a basis for recusal." (emphasis removed)). For these reasons, we **DENY** VNRC's motion for summary judgment on this issue. In light of our holding that the alleged procedural errors below do not warrant remand, we **GRANT** JLD Properties' and the Town's motions for partial summary judgment in their favor, and we therefore **DISMISS** Questions 1, 2, 3, and 4 (dealing with alleged conflicts of interest) of VNRC's Statement of Questions in Docket Number 92-5-07 Vtec.

**D.  VNRC's Motion for Summary Judgment in Docket Numbers 92-5-07 Vtec (the Site Plan and Conditional Use Approval Appeal) and 242-10-06 Vtec (the 4-Lot Subdivision Appeal) Based on Alleged Defects in the DRB Proceedings Below**

The final motion we address in today's Decision is VNRC's motion for summary judgment in Docket Numbers 92-5-07 Vtec (the site plan and conditional use approval appeal) and 242-10-06 Vtec (the 4-lot subdivision appeal). Here, VNRC argues that there were defects in the DRB proceedings below that require this Court to remand this case to the DRB. Specifically, VNRC alleges two defects: (1) that the DRB violated Bylaws § 420, and (2) that the DRB violated the parties' due process rights when the DRB issued a decision without first informing the parties of which version of the Bylaws applied to the project.

Bylaws § 420 is titled "Concurrent Review" and lists the order in which various reviews of a project are to be conducted: "If more than one type of review is required for a project, the sequence for review and issuance of a decision shall be as follows: Conditional Use, Sketch and Final Plat, Planned Unit Development (if applicable), Variance and Site Plan." Regardless of

whether § 420 applies to this project, and regardless of whether the DRB failed to follow it correctly, we find this to be precisely the type of procedural defect that is "generally disregarded in a de novo appeal." In re JLD Properties, No. 132-7-05 Vtec, slip op. at 4. Now that we have granted de novo review of these consolidated appeals, VNRC will get the concurrent review that it asks for, and the issue of whether such review was provided below is therefore moot.

As for the DRB's failure to inform the parties of whether § 420 of the Bylaws applied to this project, we find this failure to be regrettable, but it does not rise to the point of being a due process violation. The DRB noted that its determination would be the same regardless of which bylaws it was applying. Courts make similar rulings all the time—for instance, when a court finds that it need not determine what standard of review applies because the outcome is the same under any standard. It is not a due process violation just because these types of rulings do not address every issue that the parties have raised. Although municipal bodies should always aim to provide the parties with as much information as possible regarding how hearings will proceed, we know that this unfortunately will not always be the case. As with the question of the order of review, we find the procedural defect here to be the type that is "generally disregarded in a de novo appeal." Id. For these reasons, we **DENY** VNRC's motion for summary judgment on this issue.

### Conclusion

For all the reasons more fully discussed above, we **DENY** both motions for summary judgment in Docket Number 116-6-08 Vtec (the Act 250 land use permit appeal) regarding whether JLD Properties has filed an improper successive application for a project that was previously denied an Act 250 land use permit. We conclude that the issue of whether the application presents an improper successive application requires a hearing and that we can address this issue as part of the merits hearing that is already scheduled for this case. We also **DENY** VNRC's motion for reconsideration of our previous Entry Order in that same Docket Number. In addition, we **DENY** VNRC's motion for summary judgment based on alleged conflicts of interest in Docket Number 92-5-07 Vtec (the site plan and conditional use approval appeal), and we **GRANT** JLD Properties' and the Town's motions for partial summary judgment and **DISMISS** Questions 1, 2, 3, and 4 (dealing with alleged conflicts of interest) from VNRC's Statement of Questions in Docket Number 92-5-07 Vtec. Finally, we **DENY** VNRC's motion for summary judgment based on alleged defects in the DRB proceedings below in Docket

Numbers 92-5-07 Vtec (the site plan and conditional use approval appeal) and 242-10-06 Vtec (the 4-lot subdivision appeal).

We also note that this case is currently scheduled for a four-day merits hearing beginning on April 1, 2009, and continuing on April 2, 3, and 8, with April 9 and 10 reserved as well in case additional days are needed. VNRC recently filed a motion to grant a continuance of the trial. We will address this motion soon by a separate Entry Order.

Done at Berlin, Vermont this 16th day of March 2009.

_____
Thomas S. Durkin, Environmental Judge